**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0490n.06

Case Nos. 15-1993/2015

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 22, 2016
DEBORAH S. HUNT, Clerk

PETER GALINIS,

Plaintiff-Appellee,

v.

COUNTY OF BRANCH, et al.,

Defendants,

CITY OF COLDWATER, MI; COLDWATER POLICE DEPARTMENT; BRIAN WOHLHETER; DAVID PIPE; NICK THORNTON, City of Coldwater Police Officers both individually and as members of the City of Coldwater Police Department (15-1993) and C. JOHN POLLACK, Branch County Sheriff, both individually and as a member of the Branch County Sheriff's Department (15-2015),

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

BEFORE: GUY, BOGGS, and MOORE, Circuit Judges.

**BOGGS, Circuit Judge.** Peter Galinis was arrested and removed from the Branch County Courthouse after he refused to stop recording on his cell phone his interactions with a clerk and police officers. At the time of the arrest, no law prohibited Galinis from recording in

the courthouse. Galinis sued the officers who arrested him—John Pollack from the Branch County Sheriff's Office, and Brian Wohlheter, David Pipe, and Nick Thornton from the City of Coldwater Police Department—for various federal and state claims. At summary judgment, the district court denied qualified immunity to the officers on Galinis's federal claims for unlawful arrest and unlawful imprisonment, and his Michigan claims for false arrest, false imprisonment, and battery. We affirm.

I

On August 1, 2011, Peter Galinis visited the clerk's office at the Branch County Courthouse to return a DVD of a 2009 trial that he had purchased from the office earlier that day. He was distressed because the DVD was not functional and he was of the opinion that the DVD had deliberately been made defectively. After recording his interaction with the clerk on his cell phone, police officers told him to stop recording and to leave the courthouse. When Galinis refused to leave, the officers arrested him and removed him from the building.

Three video clips from Galinis's cell phone recording are publicly available on YouTube, and although they contain low-quality video, they do have some audio. Those videos can be found at: *Branch County 1 of 3 Cop Caught Breaking the Law*, YouTube (Aug. 21, 2011), https://www.youtube.com/watch?v=PWb9g8S_CmI; *Branch County 2 of 3 Cop Caught Breaking the Law*, YouTube (Aug. 21, 2011), https://www.youtube.com/watch?v=vJynaZJcoUQ; *Branch County 3 of 3 Cop Caught Breaking the Law*, YouTube (Aug. 21, 2011), https://www.youtube.com/watch?v=cLHQSCkQXXY. The events of that afternoon were also recorded by the video surveillance system at the courthouse, but those recordings do not have sound.

According to the surveillance video, Galinis arrived at the clerk's window at around 4:15 PM. After ringing the call bell, Galinis took out his cell phone and began to record. The first YouTube video shows that after clerk Julie Morrison arrived, Galinis told her about his inability to play the DVD and demanded either a refund or a new disc. Morrison did not wish to be recorded, and the second YouTube video shows that Morrison said: "When you get rid of your recording devices we will discuss this." Galinis responded by telling Morrison that he would put his phone in his pocket, and he did so, although it was still recording. Shortly thereafter, Branch County sheriff's deputy Carl Sevidal arrived and asked: "What's going on?" Galinis responded: "The disc she gave me was deliberately defective, okay. Maybe it's just my opinion, but it's highly coincidental. And I need a refund immediately of my funds here of $25 in extortion fees or a new disc right now that will play in any standard DVD player." After listening to Galinis's complaints, Sevidal asked him: "Well, are you going to give up your recording devices?" The second YouTube video ends at that point.

The surveillance video shows that Sevidal then left the hallway, and Galinis pressed the call button at the clerk's window again. A few minutes later, Sevidal returned and continued talking to Galinis. During that conversation, Galinis pressed the call button again. Sevidal then left and returned with two Coldwater police officers. A minute later, another Coldwater police officer arrived. The three Coldwater officers who arrived were defendants Brian Wohlheter, David Pipe, and Nick Thornton. According to Galinis's deposition testimony, one of the officers said: "[Branch County Circuit Court] Judge [P. William] O'Grady says ask him to leave or arrest him." In addition, Sevidal informed Michigan Magistrate Judge David Coyle that Galinis had refused to leave and cease recording. Judge Coyle stated in an affidavit that he "advised Deputy Sevidal that if Mr. Galinis was being disorderly that in my opinion he could be arrested."

Judge Coyle also stated his "opinion that Mr. Galinis should not be permitted to record Mrs. Morrison or other court employees against their wishes." At around 4:29 PM, a fifth officer, John Pollack, then a Branch County sheriff's deputy, arrived in the hallway. After talking to Galinis for a few seconds, Pollack moved behind Galinis and tried to push him away from the clerk's office window. Galinis stiffened his legs and did not allow himself to be moved. The other four officers surrounded Galinis, pushed him to the other side of the hallway against a doorframe, and placed him in handcuffs. The physical altercation was over quickly and does not appear to have been violent, but Galinis alleges that his impact against the doorframe broke his glasses, loosened his tooth, injured his wrist, and caused a sciatica flare-up in his back. Galinis was escorted out of the hallway by the five officers, and three officers accompanied him out of the building.

Galinis was charged with "resisting and obstructing," in violation of Michigan law, Mich. Comp. Laws § 750.81d(1), and "disorderly jostling," in violation of a local ordinance, according to the summary-judgment opinion by the district court in this case. At a preliminary examination before Michigan District Judge Samuel Durham on November 8, 2011, Pollack testified that Galinis was disorderly only because he refused to leave the courthouse when asked to do so, and that Galinis did not swear, yell, scream, kick, throw a tantrum, or batter or wound the officers in any way. Judge Durham found that there was probable cause and bound the case over for trial at the circuit court, but the circuit court remanded the case to him in light of the Supreme Court of Michigan's decision in *People v. Moreno*, 814 N.W.2d 624 (Mich. 2012). On June 18, 2012, Judge Durham conducted a second hearing and dismissed all charges against Galinis on the ground that Galinis had a right to refuse to leave the courthouse because there were no rules against the use of cell phones.

Galinis brought various federal and state claims against Wohlheter, Pipe, Thornton, the City of Coldwater, Pollack, and Branch County. The federal district court granted summary judgment to the defendants on several of the claims, but denied qualified immunity on Galinis's claims for: (1) unlawful arrest in violation of the United States Constitution; (2) unlawful confinement in violation of the United States Constitution; (3) false arrest under Michigan law; (4) false imprisonment under Michigan law; and (5) battery under Michigan law.

Officer Pollack and the Coldwater police officers appealed, challenging the district court's denial of summary judgment. We review the district court's summary-judgment rulings de novo. *See Gradisher v. City of Akron*, 794 F.3d 574, 582 (6th Cir. 2015). Taking the facts "in the light depicted by the videotape," all reasonable inferences must be drawn in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The defendants are entitled to summary judgment only if no rational trier of fact could find for the plaintiff. *Id.* at 380.

II

Whether a defendant receives qualified immunity in a § 1983 action turns on two questions: did the defendant violate a constitutionally protected right, and if so, was the right clearly established at the time the act was committed? *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). These questions may be addressed in any order that will facilitate a fair and efficient disposition of the case. *Id.* at 242.

Galinis's Fourth Amendment claims for wrongful arrest and wrongful imprisonment turn on whether the defendants had probable cause to arrest him. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). Probable cause exists when there is "reasonably trustworthy information" that is "sufficient to warrant a prudent man" in

believing that the person being arrested had committed or was committing an offense. *Gardenhire v. Schubert*, 205 F.3d 303, 317 (6th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In this case, the district court denied the defendants' motions for summary judgment because at the time of Galinis's arrest and imprisonment, it was not illegal to film in the courthouse and Galinis therefore had a right to remain. Although the defendants argued that they were entitled to qualified immunity, the court held that they were not entitled to qualified immunity because they lacked probable cause to arrest and imprison Galinis.

The Coldwater defendants and Pollack raise different arguments for reversing the district court's summary-judgment ruling. The Coldwater defendants argue that there was probable cause to arrest Galinis under Michigan Compiled Laws § 750.81d(1). That issue was raised before the district court and is therefore a proper issue for appeal. By contrast, Pollack's arguments, based on provisions of Coldwater's city ordinances and judicial immunity, were not raised before the district court. As such, they are forfeited.

It is an elementary rule of appellate practice that "appellate courts do not consider any issues not passed upon below." *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001). Deviations from this rule are made only in "exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice." *Id.* at 664 (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)). And we will consider an issue raised for the first time on appeal only "to the extent the issue is presented with sufficient clarity and completeness." *Ibid.* (quoting *Alexander v. Aero Lodge No. 735*, 565 F.2d 1364, 1370–71 (6th Cir. 1977)).

At the district court, the defendants focused their qualified-immunity argument on whether the officers had probable cause to arrest Galinis under § 750.81d(1). Pollack focused on

the argument that a state district judge's determination on probable cause at a preliminary examination in the criminal case against Galinis (which was later rejected by a state circuit judge in response to a decision from the Michigan Supreme Court) was controlling due to collateral estoppel. Having failed to persuade the federal district judge in this case to apply collateral estoppel so as to give preclusive effect to the state court's initial finding of probable cause and having failed to pursue collateral estoppel on appeal, Pollack now raises a completely new set of arguments based on provisions of Coldwater's city ordinances that were never presented to the district court and based on judicial immunity stemming from an informal remark made by a state magistrate judge. Because Pollack failed to raise these arguments before the district court, and this is not an exceptional circumstance, we decline to give him a second bite at the apple, and we hold that his novel arguments concerning qualified immunity are forfeited.

This leaves us with the question of whether the defendants had probable cause to arrest Galinis under § 750.81d(1). That statute provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine not more than $2,000.00, or both." The statute defines "person" as including a variety of law-enforcement and public-safety officers, including police officers, conservation officers, and firefighters. § 750.81d(7)(b). "Obstruct" is defined as "the use or threatened use of physical interference or force or a knowing failure to comply with a *lawful* command," § 750.81d(7)(a) (emphasis added), but the statute does not define any of the other verbs in the list such as "resist" or "oppose."

The Coldwater defendants argue that the officers had probable cause—or at least, could reasonably have believed that there was probable cause—to arrest Galinis for violating

§ 750.81d(1) based on *Michigan v. Ventura*, 686 N.W.2d 748 (Mich. Ct. App. 2004), *overruled by Michigan v. Moreno*, 814 N.W.2d 624 (Mich. 2012). In *Ventura*, the Court of Appeals of Michigan held that a person can be found guilty under § 750.81d(1) if he uses "force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal." *Id.* at 751. Although *Ventura* was overruled in 2012, it was good law in 2011 when the defendants arrested Galinis. According to the Coldwater defendants, even though Galinis did not break the law when he was recording with his cell phone in the courthouse, he violated § 750.81d(1) because he disobeyed the officers' unlawful orders to stop recording or leave the courthouse.

The Coldwater defendants give *Ventura* too broad a reading. *Ventura* held only that the use of *force* to resist an unlawful arrest can result in a violation of § 750.81d(1), based on the need to "reduce the likelihood and magnitude of the potential dangers inherent in an arrest situation, thereby dually protecting both the general public and its police officers." *Id.* at 752. In this case, the security-camera footage shows that Galinis did not use force against the officers. Pollack testified at the preliminary examination that Galinis was arrested only for refusing to leave, and not for swearing, yelling, kicking, throwing a tantrum, or battering the officers. Although Galinis refused to cooperate with the officers' orders, his conduct amounted to little more than passive noncompliance. Even if Galinis's actions did amount to force, *Ventura* would still be unhelpful for the defendants because it contemplates a situation in which "the arrest is illegal." *Id.* at 752. If this were a scenario in which *Ventura* applied, the sequence of events would be: (1) the officers illegally arrested Galinis; (2) Galinis responded with force; and (3) the officers legally arrested Galinis under *Ventura* for using force against an officer. Even though the second arrest would be legal under *Ventura*, the first arrest would still be illegal,

meaning that Galinis would be entitled under § 1983 to go to trial against the defendants on the first arrest unless its illegality was not clearly established. Given that the defendants do not dispute that Galinis was acting lawfully when he recorded with his cell phone in the courthouse, we are not persuaded that the district court erred when it held that there was sufficient evidence for Galinis to show that the officers arrested him without probable cause in violation of clearly established law.

It is true that § 750.81d(1) makes it a crime to "resist," "obstruct," or "oppose" an officer who is performing his duties. Although "obstruct" is defined in the statute as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command," § 750.81d(7)(a), making it inapplicable to Galinis's conduct, the words "resist" and "oppose" are not defined in the statute. It is at least debatable whether those words encompass knowing failure to comply with an unlawful command, because that interpretation would render part of the definition of "obstruct" superfluous. Under that interpretation, the legislature would have needlessly defined "obstruct" as encompassing only a failure to comply with a "lawful command," because other provisions of the statute would encompass a failure to comply with an unlawful command. Furthermore, the argument that an officer can "manufacture grounds to arrest a person innocent of wrongdoing" simply by giving an illegal directive and then making an arrest for violating that order is a "disturbing proposition" that is of "questionable constitutional validity." *Bourgeois v. Strawn*, 452 F. Supp. 2d 696, 710 (E.D. Mich. 2006). Regardless, the defendants have not raised such an argument in this appeal, and we therefore decline to consider it.

The Coldwater defendants also raise several additional points. First, they argue that a statement made by Branch County Magistrate Judge David Coyle is relevant to the issue of

qualified immunity, independent from their forfeited (and tenuous) argument based on judicial immunity. According to Pollack's testimony at the preliminary examination, Judge Coyle stated, "As far as I'm concerned, he can leave the building." That statement appears to be an informal expression of personal preference rather than a formal legal conclusion about probable cause. There is also no indication whatsoever that Judge Coyle would have had any jurisdiction over the dispute. Judge Coyle also stated in his affidavit that he told Deputy Sevidal that "if Mr. Galinis was being disorderly . . . in my opinion he could be arrested," which amounts to little more than saying that if there are grounds for arresting Galinis, Galinis can be arrested. Judge Coyle's remarks are not sufficient to render clearly established law unclear.

Second, the Coldwater defendants argue in their reply brief that the arrest was lawful under Michigan's eavesdropping statute, Michigan Compiled Laws § 750.539c. That argument was forfeited not only because it was never raised before the district court, but also because it did not appear in Coldwater's initial appellant's brief. "The general rule is that appellants cannot raise a new issue for the first time in their reply briefs." *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 820 F.2d 186 (6th Cir. 1987). This is not an exceptional case warranting a deviation from that rule. Having reviewed the record, we conclude that a reasonable jury could find that the defendants violated clearly established law by arresting Galinis. We therefore affirm the district court's denial of qualified immunity.

III

The defendants also appeal from the district court's denial of summary judgment on Galinis's state claims. Here too, the defendants raise a number of arguments that were never raised before the district court. The Coldwater defendants argue that the officers' use of force was not severe enough to amount to battery. That argument is forfeited because it was not raised

before the district court. The defendants also argue that Galinis's battery claims are barred by the statute of limitations. Again, that argument is forfeited because it was not raised before the district court. *See Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974) (applying state law to determine whether a statute of limitations argument was forfeited); *Att'y Gen. ex rel Dep't of Envtl. Quality v. Bulk Petroleum Corp.*, 741 N.W.2d 857, 864 (Mich. Ct. App. 2007) ("Affirmative defenses, such as a statute of limitations defense, must be raised in a party's first responsive pleading or by motion filed not later than the first responsive pleading."). Pollack argues that he is entitled to qualified immunity, and to the extent that he relies on the federal doctrine of qualified immunity rather than Michigan's doctrine of governmental immunity, that argument is forfeited as well because it was not raised before the district court, although it is also meritless, as the federal qualified-immunity doctrine deals only with alleged violations of federal law.

That leaves us with one final issue concerning Galinis's state claims: whether the defendants are entitled to governmental immunity under Michigan Compiled Laws § 691.1407(3). Governmental immunity "is an affirmative defense that must be proven by the governmental actor." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 784 (6th Cir. 2015) (citing *Odom v. Wayne County*, 760 N.W.2d 217, 228). A defendant is protected by governmental immunity from an intentional tort if he can show that: (1) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the acts were undertaken in good faith, or were not undertaken with malice; and (3) the acts were discretionary, as opposed to ministerial. *Odom*, 760 N.W.2d at 228.

The key challenge for the defendants is the second part of the test, which requires them to show that they acted in good faith, or were not acting with malice. When "a reasonable fact-finder could still draw an inference of . . . malice," the defendant "is not entitled to governmental immunity." *Romo v. Largen*, 723 F.3d 670, 677 (6th Cir. 2013). The defendants have raised no credible argument to refute the proposition that Galinis had a legal right to be in the courthouse; indeed, they even seem to acknowledge this, given their discussion of *Ventura*, which presupposes that the officers arrested Galinis illegally. Although the officers appeared to handle Galinis calmly and swiftly, without the use of excessive force, the officers' lack of probable cause could allow for an inference of malice. Given the subjective nature of the inquiry, there are genuine issues of material fact on this point, and we cannot conclude as a matter of law that the defendants are entitled to governmental immunity.

IV

Given the several forfeited arguments raised by the appellants in this case—some of which may actually have been stronger than the arguments made in the district court—it is worth reiterating that our function as an appellate court "is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006). Although it is understandable that counsel would want to raise previously overlooked arguments on appeal—in one instance, in a reply brief—we decline to reverse the district court based on legal theories that it never had the opportunity to consider.

Refusing to allow video recordings in a courthouse may be a sensible policy. Indeed, it is the policy of this federal appellate court and the policy of the Branch County Courthouse today. But for whatever reason, no such policy existed when Galinis made his recording, and he had a

lawful right to be in the courthouse. Galinis has presented a credible case that the officers acted unlawfully, and he is therefore entitled to a trial. The district court's judgment is AFFIRMED.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I agree with the majority that the district court correctly denied qualified immunity to the officers. Because I prefer not to opine on the strength of the appellant's forfeited arguments on appeal—or the wisdom of prohibiting video recordings in a courthouse—I respectfully concur only in the judgment.

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 22, 2016

Ms. Mary Massaron

Mr. William Frank Piper II

Ms. Marcelyn A. Stepanski

Re: Case No. 15-1993/15-2015, *Peter Galinis v. Branch, County Of, et al*
Originating Case No. : 1:14-cv-00460

Dear Counsel:

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Leon T. Korotko
Case Manager
Direct Dial No. 513-564-7014

cc: Mr. Thomas Dorwin

Enclosure

Mandate to issue